1 QUINN EMANUEL URQUHART & SULLIVAN, LLP
Stephen Broome (State Bar No. 314605)
2 stephenbroome@quinnemanuel.com
865 South Figueroa Street, 10th Floor
3 Los Angeles, California 90017-2543
Telephone: (213) 443-3000
4

5 [Additional Counsel on Signature Page]

6 *Counsel for OpenEvidence Inc.*

7

8                     **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
9                       **SAN FRANCISCO DIVISION**

10

11

| | |
|---|---|
| 12 OPENEVIDENCE INC., | Case No. _____ |
| 13              Plaintiff, | **(Related to Pending Out-of-State Action: Case No. 25-11802-RGS in the** |
| 14        v. | **District of Massachusetts)** |
| 15 DOXIMITY, INC., JEY | **NOTICE OF MOTION AND** |
| 16 BALACHANDRAN, JAKE KONOSKE, | **MEMORANDUM OF POINTS AND** |
| PATHWAY MEDICAL, INC., LOUIS | **AUTHORITIES IN SUPPORT OF** |
| 17 MULLIE, JONATHAN HERSHON ST- | **MOTION TO QUASH SUBPOENA** |
| JEAN, HOVHANNES KARAPETYAN, | **TO LINKEDIN CORP., OR IN THE** |
| 18 ERIC YAMGA, KHUDHUR MOHAMMED, | **ALTERATIVE TO ISSUE** |
| and VINCE ROY | **PROTECTIVE ORDER** |
| 19 | |
| 20              Defendants. | **Hearing Date: To Be Set** |
| | **Time:          To Be Set** |
| 21 | **Location:      To Be Set** |
| 22 | **Judge:         To Be Assigned** |
| 23 | |
| 24 | |

25

26

27

28

---

OPENEVIDENCE'S MOTION TO QUASH SUBPOENA TO LINKEDIN CORP.

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** THAT on _____, 2025, at _____ a.m/p.m. or as soon thereafter as the matter may be heard by _____ in Courtroom _____ in the United States District Court for the Northern District of California, Plaintiff and Counterclaim Defendant OpenEvidence Inc., pursuant to Federal Rule of Civil Procedure 26 (b) and 45(c), through local counsel hereby moves to quash a third-party subpoena seeking irrelevant and confidential communications issued to LinkedIn Corp. by Defendant and Counterclaim Plaintiff Doximity, Inc., in the underlying action pending in the United States District Court for the District of Massachusetts, Case Number 25-11802-RGS.

The Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in Support of Motion, the Declaration of Stephen Broome, and all exhibits attached thereto.

Dated: December 15, 2025

## TABLE OF CONTsENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.  INTRODUCTION ....................................................................................................... 1

II.  BACKGROUND ......................................................................................................... 2

    A.  The Underlying Litigation ................................................................................ 2

    B.  The LinkedIn Subpoena ................................................................................... 3

    C.  OpenEvidence Attempts to Confer with Doximity ........................................ 5

III.  LEGAL STANDARD .................................................................................................. 6

IV.  ARGUMENT ............................................................................................................... 7

    A.  OpenEvidence Has Standing To Challenge The LinkedIn Subpoena ................. 7

        1.  OpenEvidence Has a Personal Right in Account Information ...................... 7

        2.  OpenEvidence Has a Personal Right in Confidential Marketing Strategy Information ...................................................................................... 8

    B.  The Court Should Quash the LinkedIn Subpoena ............................................ 10

        1.  The Subpoena Seeks Confidential Marketing Intelligence That Is Overbroad Or Not Relevant and For Which Doximity Cannot Show Substantial Need ............................................................................................ 10

        2.  The Subpoena Imposes An Undue Burden By Seeking Information Available Through Less Burdensome Means ................................................. 13

    C.  In The Alternative, The Court Should Issue A Protective Order ........................ 17

V.  CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

### Cases

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014)................................................................. 14

*In re Ashworth, Inc. Securities Litigation*,
   2002 WL 33009225 (S.D. Cal. May 10, 2002) ........................................... 8

*Blotzer v. L-3 Communications Corp.*,
   287 F.R.D. 507 (D. Ariz. 2012).................................................................. 10

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*,
   284 F.3d 302 (1st Cir. 2002) ...................................................................... 13

*Chevron Corp. v. Donziger*,
   2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ....................................6, 7, 8

*Coleman v. Schwarzenegger*,
   2007 WL 4276554 (E.D. Cal. Nov. 29, 2007)............................................ 17

*Crispin v. Christian Audigier, Inc.*,
   717 F.Supp.2d 965 (C.D. Cal. 2010)....................................................6, 7, 10

*Duong v. Groundhog Ents., Inc.*,
   2020 WL 2041939 (C.D. Cal. Feb. 28, 2020) ........................................... 14

*EON Corp. IP Holdings, LLC v. T–Mobile USA, Inc.*,
   2012 WL 1980361 (N.D. Cal. June 1, 2012)............................................... 7

*Freed v. Home Depot U.S.A., Inc.*,
   2019 WL 183833 (S.D. Cal. Jan. 14, 2019)................................... 10, 11, 12

*Glass Egg Digital Media v. Gameloft, Inc.*,
   2019 WL 4166780 (N.D. Cal. Sept. 3, 2019)........................................14, 17

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005)................................................................ 14

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ................................................... 14, 15, 16

*Rawcar Group, LLC v. Grace Med., Inc.*,
   2014 WL 12199977 (S.D. Cal. June 26, 2014) ........................................... 6

*In re Subpoena of DJO, LLC*,
   295 F.R.D. 494 (S.D. Cal. 2014).................................................... 11, 12, 13

*Twitch Interactive, Inc. v. Does 1 Through 100,*
    2019 WL 3718582 (N.D. Cal. Aug. 7, 2019) ............................................................................ 17

OPENEVIDENCE'S MOTION TO QUASH SUBPOENA TO LINKEDIN CORP.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

This motion concerns a third-party subpoena served upon LinkedIn Corporation ("LinkedIn") in connection with a case brought by movant OpenEvidence Inc. ("OpenEvidence") in the United States District Court for the District of Massachusetts. The subpoena, served by Defendant Doximity, Inc. ("Doximity"), calls for compliance in this District. Doximity's subpoena to LinkedIn, (the "LinkedIn Subpoena" or "Subpoena"), seeks irrelevant, confidential and proprietary information in which OpenEvidence has a personal right, sufficient to provide OpenEvidence with standing to challenge the LinkedIn Subpoena.

This Court should quash the LinkedIn Subpoena for two reasons. First, the confidential and proprietary information that Doximity seeks concerns the marketing strategies that OpenEvidence deploys on LinkedIn—including targeting criteria, audience selection methodology, and performance analytics. The *non*-public information that Doximity seeks is not relevant to any claim or defense in the underlying action, and Doximity is thus unable to show substantial need (or, in fact, any need) for the highly sensitive competitive information it seeks. Doximity purports to be a direct competitor to OpenEvidence. The breadth of the LinkedIn Subpoena's reach for OpenEvidence's confidential marketing strategy and competitive intelligence, combined with the lack of any relevance that information has in the underlying action, raises serious questions about the improper fishing expedition that Doximity is engaged in.

Second, to the extent the LinkedIn Subpoena seeks non-confidential information, the Subpoena is fatally flawed because any remaining information sought is either (1) information which OpenEvidence has already agreed to provide Defendants; (2) information that is public; or (3) information that Doximity could and should seek through party discovery. During the parties' conferral on December 5, 2025, OpenEvidence offered to identify the LinkedIn accounts that were the subject of the Subpoena—the very information Doximity claims it needs. Yet, Doximity has not withdrawn these Requests and instead insists on pursuing the third-party subpoena to obtain OpenEvidence's confidential information. The LinkedIn Subpoena is a

clear attempt by Doximity to avoid seeking this information through party discovery. Understanding that these Requests were overbroad and sought OpenEvidence's confidential information, Doximity served the Requests on LinkedIn in an attempt to avoid OpenEvidence's valid objections. In fact, Doximity has to date only served 22 of its allotted 30 Requests for Production, making these Requests all the more unduly burdensome and inappropriate, and providing further reason to quash the LinkedIn Subpoena in its entirety.

For the reasons explained herein, OpenEvidence respectfully requests that the Court quash this improper LinkedIn Subpoena or in the alternative issue a protective order.

## II.    BACKGROUND

### A.    The Underlying Litigation

The underlying action concerns a scheme carried out by Doximity, its executives, and the employees of another Defendant company (Pathway Medical Inc., or "Pathway") to impersonate healthcare providers to gain unauthorized access to OpenEvidence's medical AI platform. *See* Ex. A (Dkt. 38, Amended Complaint in *OpenEvidence Inc. v. Doximity, Inc. et al.*, Case No. 25-11802-RGS (D. Mass.)).   OpenEvidence's platform provides real-time, evidence-based clinical decision support for hundreds of thousands of licensed healthcare professionals, who must register as licensed healthcare professionals to use the platform. *See id.* ¶¶ 21, 42.  Beginning in late 2024, OpenEvidence discovered that employees at the highest levels of Doximity and Pathway—would-be competitors of OpenEvidence—had been impersonating healthcare providers to gain unauthorized access to the OpenEvidence platform, in an attempt to gain access to OpenEvidence's proprietary information, including its system prompts and code. *See id.* ¶¶ 1–14.  Defendants admitted to misappropriating the identities of healthcare professionals and patients to gain unauthorized access to the OpenEvidence platform on multiple occasions. *See* Ex. B (Dkt. 60, Amended Answer in *OpenEvidence Inc. v. Doximity, Inc. et al.*, Case No. 25-11802-RGS (D. Mass.)) ¶¶ 7, 10, 14, 26, 31, 44, 58, 61, 62, 66, 78–81, 83.  They also admitted that, after they gained unauthorized access, they launched prompt injection attacks to learn OpenEvidence's system prompts. Ex. B (Amended Answer) ¶¶ 7, 14, 61, 62, 66, 78–81, 83.

In response to these allegations, Defendants Doximity and Pathway have brought (retaliatory and meritless) counterclaims, asserting claims under the Lanham Act, for defamation, and for unfair competition. *See* Ex. B (Amended Counterclaims). Those Counterclaims include allegations that OpenEvidence operated LinkedIn accounts—which Doximity alleges have "very few, or even zero, followers," *id.* ¶ 79 —that made certain posts, some of which relate to Doximity, most of which do not. However, Doximity fails to point to even a single post or statement from any of these accounts' public pages.[1] Without identifying specific actionable content, Doximity cannot establish the relevance of the sweeping information it seeks through the LinkedIn Subpoena.

**B.    The LinkedIn Subpoena**

On November 18, 2025, Doximity served upon LinkedIn a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action. *See* Ex. C. The LinkedIn Subpoena includes the following eight document requests (the "Requests"):

**DOCUMENT REQUEST NO. 1:** Documents sufficient to identify the account owners or other persons or entities associated with the following LinkedIn accounts, including but not limited to documents sufficient to identify the full names, contact information, email address(es), billing information, and any pseudonymous or anonymized account information associated with the following LinkedIn accounts: Tech Law News, American Courtroom, Bubble Watch, and Curated Market Research.

**DOCUMENT REQUEST NO. 2:** Documents sufficient to identify all personal or business accounts used, accessed, purchased, controlled, or maintained by OpenEvidence (including emails ending in OpenEvidence.com), Scalable Magic Inc. or Scalable Magic (U.S.) Inc., Monocle Technologies, XYLA Inc. (including emails ending in xyla.com), Daniel

---

[1]    OpenEvidence will move to dismiss the counterclaims in their entirety on December 23.

Nadler,[2] and/or any of the person(s) identified in Your response to Request for Production No. 1, including but not limited to account names, account registration information, contact information, email address(es), billing information, and any pseudonymous or anonymized account information associated directly or indirectly with individuals or entities mentioned in this request.

**DOCUMENT REQUEST NO. 3:** Documents and Communications sufficient to identify all individuals or entities or devices which access or have accessed the accounts described in Request for Production No. 2, including IP addresses, access time stamps, login/logout records, geo-location information, device or session identifiers, and any other information relevant to identifying the user's device.

**DOCUMENT REQUEST NO. 4:** All Documents comprising posts, advertisements, sponsored posts, or paid promotions on LinkedIn by, on behalf of, or sponsored by OpenEvidence (including emails ending in OpenEvidence.com), Scalable Magic Inc. or Scalable Magic (U.S.) Inc., Monocle Technologies, XYLA Inc. (including emails ending in xyla.com), Daniel Nadler, or the accounts described in Request for Production No. 2, from January 1, 2024 to the present, that reference, mention, compare, or Concern Doximity.

**DOCUMENT REQUEST NO. 5:** All Documents and Communications Concerning the creation, targeting, audience selection, dissemination, and performance analytics (including reach, impressions, engagement, and click-through rates) of any advertisements, sponsored posts, or paid promotions on LinkedIn by or on behalf of OpenEvidence, Scalable Magic Inc., Monocle Technologies, XYLA Inc., Daniel Nadler, or the accounts described in Request for Production No. 2, that reference, mention, or Concern Doximity.

**DOCUMENT REQUEST NO. 6:** All Documents and Communications Concerning any posts, advertisements, sponsored posts, or paid promotions on LinkedIn by or on behalf of

---

[2]  Doximity alleges that Scalable Magic, Monocle Technologies, and XYLA are all predecessors of OpenEvidence. Ex. B (Amended Counterclaims) ¶ 84. On August 20, 2021, "Scalable Magic U.S. Inc.," changed its name to "Monocle Technologies." On November 4, 2021, the name was changed to "XYLA Inc." Finally, on February 24, 2025, the name "XYLA Inc." was changed to "OpenEvidence, Inc."

OpenEvidence, Scalable Magic Inc., Monocle Technologies, XYLA Inc., Daniel Nadler, or the accounts described in Request for Production No. 2, that reference, mention, compare, or Concern OpenEvidence's user base, National Provider Identifier (NPI) verification, accuracy, hallucinations, United States Medical Licensing Examination (USMLE) performance, protection of patient confidentiality, HIPAA compliance, ranking or position in the Apple App Store or any claim that OpenEvidence is "#1 for Doctors" or similar language.

**DOCUMENT REQUEST NO. 7:** All Documents and Communications Concerning any complaints, reports, or internal reviews by LinkedIn regarding posts, advertisements, sponsored posts, or paid promotions by or on behalf of OpenEvidence, Scalable Magic Inc., Monocle Technologies, XYLA Inc., Daniel Nadler, or the accounts described in Request for Production No. 2.

**DOCUMENT REQUEST NO. 8:** All Documents and Communications Concerning any advertisements paid for, issued, or otherwise sponsored by a LinkedIn account, page or other organizational profile described in Request for Production No. 2.

**C.    OpenEvidence Attempts to Confer with Doximity**

On December 5, 2025, OpenEvidence and Doximity met and conferred regarding the LinkedIn Subpoena. During the conferral, OpenEvidence explained that the Requests propounded on LinkedIn seek confidential and proprietary information related to OpenEvidence's LinkedIn marketing strategies, and informed Doximity that OpenEvidence intended to move to quash the Subpoena. OpenEvidence additionally expressed its concern that the Requests were an end-run around party discovery, as Doximity had not even tried to seek the information at issue from OpenEvidence. Doximity had not even served all of its 30 Requests for Production before seeking this information from a nonparty instead. In fact, Doximity did not serve a single Request for Production that sought documents, communications, or information related to OpenEvidence's LinkedIn accounts. During that conferral, OpenEvidence informed Doximity that it would identify the LinkedIn accounts that were the subject of the Subpoena to the extent any of them are owned or controlled by OpenEvidence, its predecessors or its founder Daniel Nadler—i.e., OpenEvidence agreed to

provide the very information Doximity purportedly needs to understand which accounts posted content relevant to its counterclaims.  Ex. D (December 10, 2025 Email Correspondence). Despite this offer, Doximity has not withdrawn these Requests.[3]

## III.    LEGAL STANDARD

A party to the litigation may move to quash a nonparty subpoena where it "claims some personal right or privilege with regard to the documents sought."  *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 973 (C.D. Cal. 2010) (citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2459 (3d ed. 2008)).

Under Federal Rule of Civil Procedure 45, a court "must quash or modify a [nonparty] subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or protected matter . . . ; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  Additionally, Rule 45(d)(3)(B) permits a court to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i).

Moreover, "[a] third party subpoena issued pursuant to Rule 45 also is subject to the limitations of Rule 26," *Rawcar Group, LLC v. Grace Med., Inc.*, 2014 WL 12199977, at *2 (S.D. Cal. June 26, 2014), which requires courts to limit discovery if, *inter alia*, that discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2)(C)(i).  Rule 45(d)(1) imposes an affirmative duty on "a party or attorney responsible for issuing and serving a subpoena" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).

"On a motion to quash a subpoena, the moving party has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant."  *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citing

---

[3]   Doximity agreed to extend the return date for the subpoena to December 15, 2025.  *See* Ex. E (December 5, 2025 Email Correspondence).

*EON Corp. IP Holdings, LLC v. T–Mobile USA, Inc.*, 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012)).  Under Rule 45(d)(3)(C), even where a subpoena seeks confidential commercial information, the court may order production only if "the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated."  Fed. R. Civ. P. 45(d)(3)(C).  Thus, the burden is on Doximity to demonstrate both relevance and substantial need for any confidential information it seeks.  Doximity cannot meet this burden.

## IV.    ARGUMENT

### A.    <u>OpenEvidence Has Standing To Challenge The LinkedIn Subpoena</u>

As a preliminary matter, OpenEvidence has standing to move to quash the LinkedIn Subpoena because OpenEvidence "claims [a] personal right or privilege with regard to the documents sought."  *Crispin*, 717 F.Supp.2d at 973.

#### 1.    OpenEvidence Has a Personal Right in Account Information

*First*, OpenEvidence has a personal right in the account information that Doximity seeks through Request Nos. 1, 2 and 3.  "[A]n individual has a personal right in information in his or her profile and inbox on a social networking site and his or her webmail inbox in the same way that an individual has a personal right in employment and bank records."  *Crispin*, 717 F.Supp.2d at 974.  Courts have held that "this personal right is sufficient to confer standing to move to quash a subpoena seeking such information."  *Id*.  In *Chevron*, for example, this Court dealt with a nonparty subpoena which requested remarkably similar information to that requested here.  *See* 2013 WL 4536808, at *4.  Chevron served nonparty subpoenas on Google and Yahoo, seeking:

> "'[a]ll documents related to [] the identity of the user of the following email addresses, including but not limited to documents that provide all names, mailing addresses, phone numbers, billing information, date of account creation, account information and all other identifying information associated with the email addresses under any and all names, aliases, identities or designations related to the email address."

*Id.* at *2.  The court held that the defendants had standing to move to quash the subpoena as to "the email addresses they claim to own."  *Id.* at *4.  Here, Request Nos. 1, 2, and 3 seek precisely the type of personal account information for which *Crispin* and *Chevron* recognized standing: account

owner identification, full names, contact information, email addresses, billing information, account registration information, IP addresses, access timestamps, login/logout records, geo-location information, and device identifiers. This information relates to LinkedIn accounts that OpenEvidence and/or its personnel own and control, as well as the personal information of OpenEvidence's employees and principals who access those accounts. Just as the defendants in *Chevron* had standing to challenge a subpoena seeking identifying information about "the email addresses they claim to own," *id*. at *4, OpenEvidence has standing to challenge a subpoena seeking identifying information about the LinkedIn accounts it owns and the individuals associated with those accounts. This personal right in account information is sufficient to confer standing on OpenEvidence to move to quash.

Moreover, unlike in *Chevron*—where the court ultimately enforced the subpoena because the information was relevant and the defendants were refusing to provide it—here OpenEvidence offered during the December 5, 2025 conference to provide Doximity with the exact account identification information it claims to need. Ex. D. Yet, Doximity has not withdrawn these Requests. Thus, not only does OpenEvidence have standing to challenge these Requests based on its personal right in the information, but the Requests should also be quashed because OpenEvidence has already offered to provide the information through less burdensome means, rendering the third-party subpoena unnecessary and improper. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (Courts should limit discovery when that discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive" such as when a party offers to produce the information sought).

### 2. OpenEvidence Has a Personal Right in Confidential Marketing Strategy Information

*Second*, OpenEvidence has a right in confidential and proprietary information regarding its LinkedIn marketing strategy that Doximity seeks in the remaining Requests. A party has standing to move to quash a nonparty subpoena where that subpoena seeks the party's confidential and proprietary information including "commercial information that is critical to [the party] maintaining a competitive business." *In re Ashworth, Inc. Securities Litigation*, 2002 WL 33009225, at *2 (S.D.

Cal. May 10, 2002). Here, Doximity has requested that LinkedIn produce documents that constitute OpenEvidence's confidential and proprietary marketing strategies.

For example, in Request No. 5, Doximity seeks "[a]ll Documents and Communications Concerning the creation, targeting, audience selection, dissemination, and performance analytics (including reach, impressions, engagement, and click-through rates) of any advertisements, sponsored posts, or paid promotions on LinkedIn by or on behalf of OpenEvidence, Scalable Magic Inc., Monocle Technologies, XYLA Inc., Daniel Nadler, or the accounts described in Request for Production No. 2, that reference, mention, or Concern Doximity." Documents concerning the "creation, targeting, audience selection, dissemination, and performance analytics" of OpenEvidence's LinkedIn advertisements are self-evidently documents that would reveal details concerning the marketing strategy that OpenEvidence uses on the LinkedIn platform—including how it creates and targets ads and information regarding whether those ads are or are not successful. This information constitutes core competitive intelligence. Armed with this information, Doximity—a direct competitor—could reverse-engineer OpenEvidence's strategies, target the same audiences, and gain unfair competitive advantages wholly unrelated to the resolution of any claim in this litigation.

The same is true for Request Nos. 4, 6, 7, and 8. While Request Nos. 6, and 8 seek some public information in the form of publicly accessible advertisements and posts, none of these Requests limits itself to such content. Instead, they request "[a]ll Documents and Communications *Concerning*" these posts and advertisements—which would encompass non-public documents such as the targeting criteria used, the reach and performance of those advertisements. Request No. 4 encompasses similar information, including an identification of any advertisements that OpenEvidence or affiliated accounts sponsor or pay for. Request No. 7 seeks "[a]ll Documents and Communications *Concerning* any complaints, reports, or internal reviews by LinkedIn regarding posts, advertisements, sponsored posts, or paid promotions by or on behalf of OpenEvidence, Scalable Magic Inc., Monocle Technologies, XYLA Inc., Daniel Nadler, or the accounts described in Request for Production No. 2." Such a broad Request encompasses documents and communications that would reflect OpenEvidence's proprietary marketing activities and strategy.

1    As OpenEvidence has a "personal right or privilege with regard to the documents

2    sought," *Crispin*, 717 F.Supp.2d at 973, OpenEvidence has standing to move to quash each of

3    the Requests in the LinkedIn Subpoena.

4    **B.    The Court Should Quash the LinkedIn Subpoena**

5    The Court should quash the LinkedIn Subpoena for two reasons.  First, the Subpoena seeks

6    confidential marketing strategy and competitive intelligence that is not relevant to any claim or

7    defense, and for which Doximity cannot demonstrate substantial need.  Second, the Subpoena seeks

8    information that is either publicly available, in OpenEvidence's possession, custody, or control—

9    making the burden on LinkedIn unnecessary and improper—or improperly seeks to evade the

10   objections that OpenEvidence would make if Doximity were to request such information directly

11   from OpenEvidence.

12   **1.    The Subpoena Seeks Confidential Marketing Intelligence That Is**

13   **Overbroad Or Not Relevant and For Which Doximity Cannot Show**

14   **Substantial Need**

15   Information or documents are only discoverable under Rule 45 if not privileged and if

16   relevant to a party's claim or defense.  Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45 Advisory

17   Comm.'s Note (1970).  The Court may "for good cause, issue an order to protect a party or

18   person from 'undue burden;' the court's ability to issue such an order is not limited to

19   circumstances in which the burdened party is the party 'from whom discovery is sought.'"

20   *Blotzer v. L-3 Communications Corp.*, 287 F.R.D. 507, 510 (D. Ariz. 2012) (granting a party's

21   motion to quash a nonparty subpoena where party had standing because the requests were "not

22   reasonably calculated to lead to the discovery of admissible evidence.").  "Courts have broad

23   discretion to determine whether a subpoena is unduly burdensome.  For example, a subpoena

24   is unduly burdensome where it seeks to compel . . . production of documents regarding topics

25   unrelated to or beyond the scope of the litigation." *Freed v. Home Depot U.S.A., Inc.*, 2019

26   WL 183833, at *3 (S.D. Cal. Jan. 14, 2019) (internal citations omitted).  Additionally,

27   "although irrelevance is not among the enumerated reasons for quashing a subpoena under Rule

28   45(d)(3), federal courts have incorporated relevance as a factor to be considered when ruling

1  on motions to quash." *Id.*

2      If a subpoena seeks a party's confidential information, "the burden shifts to the requesting

3  party to show a 'substantial need' for the information." *In re Subpoena of DJO, LLC*, 295 F.R.D.

4  494, 498 (S.D. Cal. 2014) (quotation omitted).  Doximity cannot meet this burden because the

5  LinkedIn Subpoena seeks OpenEvidence's confidential marketing strategy and competitive

6  intelligence that has no relevance to Doximity's counterclaims.

7                  (a)     Request No. 5 Is Overbroad And Seeks Core Marketing Strategy

8      Request No. 5 seeks "[a]ll Documents and Communications Concerning the creation,

9  targeting, audience selection, dissemination, and performance analytics (including reach,

10  impressions, engagement, and click-through rates)" of OpenEvidence's LinkedIn advertisements.

11  This Request seeks information about OpenEvidence's marketing strategy, including which

12  audiences OpenEvidence prioritizes and considers most valuable; how OpenEvidence develops and

13  crafts marketing messages; which messages and strategies perform most effectively, including

14  reach, impressions, engagement rates, and click-through rates; and how OpenEvidence deploys and

15  scales its marketing campaigns.

16      As Doximity has largely failed throughout their Amended Counterclaims to point to specific

17  LinkedIn advertisements that contain false or misleading statements it is unclear how such a broad

18  array of information is relevant or proportional to its claims.  The targeting of an advertisement or

19  its dissemination is only relevant to proving a Lanham Act false advertising claim when tied to an

20  actual advertisement that contains allegedly false of misleading statements.  Here, Doximity does

21  not limit its Requests to the targeting criteria or engagement with advertisements alleged in its

22  Amended Counterclaims.  Given that Request No. 5 seeks information related any advertisement or

23  posts that "reference, mention, or Concern Doximity," it seeks such information related to all such

24  advertisements.  The breadth of this Request, unmoored from actual allegations of false or

25  misleading statements demonstrate that the design of these Requests was to seek OpenEvidence's

26  confidential marketing strategy.  Request No. 5 is "unduly burdensome" discovery "regarding topics

27  unrelated to or beyond the scope of the litigation." *Freed*, 2019 WL 183833, at *3.  It is a transparent

28  attempt to obtain OpenEvidence's confidential and proprietary marketing strategy under the guise

of discovery. This is not a colorable basis for which Doximity has a "substantial need" for this confidential information. *Subpoena of DJO*, 295 F.R.D. at 497.

     (b)  Request No. 8 Seeks OpenEvidence's Advertising Portfolio Without Any Limitation to Doximity

  Request No. 8 seeks "All Documents and Communications Concerning any advertisements paid for, issued, or otherwise sponsored by" OpenEvidence's LinkedIn accounts—without any limitation to advertisements that mention, reference, or concern Doximity. This would encompass all of OpenEvidence's advertisements and posts, including those that have nothing to do with Doximity or competitive comparisons.

  There is no colorable argument that OpenEvidence's advertising portfolio is relevant to Doximity's false advertising claims. Request No. 8's failure to include any limitation on this Request demonstrates that its true purpose is to obtain comprehensive competitive intelligence about OpenEvidence's marketing efforts. Moreover, by seeking "All Documents and Communications Concerning" these advertisements, Request No. 8 reaches beyond simple posts and advertisements to encompass drafts and performance analytics regarding those posts and advertisements. This confidential competitive intelligence has no relevance to whether any particular statement about Doximity was false or misleading, and thus has no bearing on Doximity's Lanham Act claim. This Request is also "beyond the scope of the litigation," *Freed*, 2019 WL 183833, at *3, and Doximity cannot show a "substantial need" for this confidential competitive information. *Subpoena of DJO*, 295 F.R.D. at 497.

     (c)  Request Nos. 4 and 6 Improperly Seek Non-Public Strategic Information

  Request Nos. 4 and 6 seek "All Documents" and Communications Concerning posts and advertisements, not merely the content of those posts and advertisements themselves. By seeking "All Documents and Communications Concerning" posts and advertisements, these Requests reach beyond public content to encompass: internal documents about why advertisements were created; targeting and audience selection criteria for specific advertisements; performance analytics for specific advertisements; communications about advertising strategy and effectiveness; and budget

and resource allocation decisions.  This non-public information about OpenEvidence's marketing strategy has no relevance to whether any public statement was false or misleading.  The falsity and deception elements of a Lanham Act claim turn on what was communicated to the public, *see Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002)(explaining that a Lanham Act false advertising claim must be based on a false or misleading statement in a *commercial advertisement*), not on OpenEvidence's internal strategic considerations or performance metrics.  This Request is also beyond the scope of this litigation and Doximity cannot meet its burden of showing "substantial need." *Subpoena of DJO*, 295 F.R.D. at 497.

           (d)        Request No. 7 Seeks LinkedIn's Internal Processes That Have No Relevance to Falsity or Deception

Request No. 7 seeks "[a]ll Documents and Communications Concerning any complaints, reports, or internal reviews by LinkedIn" regarding OpenEvidence's advertisements.  Such internal LinkedIn processes have no bearing on whether posts constitute commercial advertisements or whether the advertisements contained false or misleading statements.

It is unclear how complaints or reports about LinkedIn posts could be relevant to whether the alleged statements were false or material.  While isolated LinkedIn complaints might reflect that some users found content objectionable, that does not establish that the content was actually false, deceived a substantial segment of the target audience, or was material to purchasing decisions.  Nor can these documents provide evidence as to whether a post was placed in interstate commerce or whether Doximity was damaged.

Because (1) the LinkedIn Subpoena seeks OpenEvidence's confidential marketing strategy and competitive intelligence that is not relevant to any claim or defense in this case, and (2) Doximity cannot demonstrate substantial need for this information, this Court should grant OpenEvidence's motion to quash Request Nos. 4–8.

**2.      The Subpoena Imposes An Undue Burden By Seeking Information Available Through Less Burdensome Means**

"In determining whether the subpoena should be enforced, the Court is guided by not only

Federal Rule of Civil Procedure 45(c)(3)(A)(iv) which protects subpoenaed parties from 'undue burden' but also Rule 26, which provides, inter alia, that a court may limit discovery if 'the discovery sought . . . is obtainable from some other source that is more convenient, less burdensome, or less expensive' or if 'the burden or expense of the proposed discovery outweighs its likely benefit.'" *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007).

Request Nos. 1–4, 6, and 8 seek information and documents that are either publicly available or in OpenEvidence's possession, custody, or control, making the burden on LinkedIn unnecessary and improper. Courts in this circuit regularly quash nonparty subpoenas that seek discovery more easily and inexpensively obtained from a party. *See, e.g.*, *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 411 (C.D. Cal. 2014); *Duong v. Groundhog Ents., Inc.*, 2020 WL 2041939, at *8 (C.D. Cal. Feb. 28, 2020); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005); *Nidec*, 249 F.R.D. at 577; *Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 4166780, at *5 (N.D. Cal. Sept. 3, 2019).

Further, as previously explained, to the extent that these Request seek any relevant information, they go far beyond what Doximity is entitled to seek through the course of discovery. It is evident that Doximity chose to serve these Requests upon nonparty LinkedIn precisely because Doximity understood their deficiencies. Doximity understood that OpenEvidence would in large part object to the production of documents responsive to these Requests because Doximity is seeking OpenEvidence's confidential and proprietary marketing information. Doximity should not be allowed to avoid OpenEvidence's valid objection to being forced to produce its confidential marketing strategy information by burdening LinkedIn with Requests that should have and could have been served on OpenEvidence.

(a)     Request Nos. 1–3 Seek Account Information OpenEvidence Has Offered to Provide

Request Nos. 1–3 seek information sufficient to identify the owners of LinkedIn accounts, all accounts maintained by OpenEvidence and its affiliates, and information about the individuals and devices that have access to those accounts. OpenEvidence offered during the December 5, 2025

meet and confer to provide the information necessary to identify the owners of the accounts at issue, to the extent that OpenEvidence, its predecessors, or Daniel Nadler owned or controlled those accounts. Ex. D. Such accounts are the only ones that could even arguably be relevant to Doximity's counterclaims. Despite this offer, Doximity has not withdrawn the Requests and continues to seek this information from a third-party, rather than OpenEvidence. There is no legitimate reason for Doximity to reject OpenEvidence's offer to provide account identification information directly and instead insist on burdening a third party with a subpoena. There can be no dispute that OpenEvidence possesses information sufficient to identify accounts it maintains and the individuals who access those accounts. Request No. 2 specifically asks for account information related to accounts maintained by OpenEvidence, its predecessors, and Daniel Nadler—information that is definitionally in OpenEvidence's possession, custody, or control.

Doximity cannot justify imposing the "burden and expense" of subpoena compliance on LinkedIn when OpenEvidence has already offered to provide this information. *Nidec,* 249 F.R.D. at 577. Further, serving a third-party with Requests for the production of information that is possessed by OpenEvidence is nothing more than an obvious attempt to avoid the potential for valid objections to the breadth or relevance of such Requests.

(b)    Request Nos. 4, 6, and 8 Seek Content and Information in OpenEvidence's Possession, Custody, or Control

To the extent Request Nos. 4 and 6 seek the actual content of "posts, advertisements, sponsored posts, or paid promotions," and to the extent Request No. 8 seeks the actual content of "advertisements," this information is both publicly available to Doximity and also duplicative of Requests for Production already served on OpenEvidence. Request No. 4 even specifies that it seeks posts by "OpenEvidence (including emails ending in OpenEvidence.com)." There can be no doubt that documents comprising posts made by OpenEvidence or OpenEvidence email accounts would be in OpenEvidence's possession, custody, or control.

Moreover, to the extent these Requests seek content that was posted publicly on LinkedIn, that information is either still publicly available or was available to Doximity when posted. Doximity does not need a subpoena to LinkedIn to obtain publicly posted content.

Request No. 6, for example, seeks information about posts that reference OpenEvidence's own products. OpenEvidence obviously has possession, custody, or control of such documents and communications. It is unclear what information this Request seeks that would be in LinkedIn's possession but not OpenEvidence's. The same is true of Request No. 8, which seeks information about advertisements paid for or sponsored by OpenEvidence's accounts. Given that the entities referenced include OpenEvidence, its predecessors, and Daniel Nadler, it is not disputable that OpenEvidence would have such documents and communications in its possession, custody or control.

(c)    Doximity's Attempt to Circumvent Party Discovery Demonstrates the Impropriety of This Subpoena

Doximity's decision to proceed directly to third-party discovery rather than first seeking information from OpenEvidence is particularly egregious given that Doximity has failed to exhaust its available party discovery. Doximity served only 22 of its allotted 30 Requests for Production and did not serve a single Request regarding these LinkedIn accounts. Despite having eight unused Requests for Production, Doximity chose not to request any information about OpenEvidence's LinkedIn accounts, advertising activities, or social media presence.

The present circumstances are similar to those in *Nidec*, where defendants moved to quash a nonparty subpoena that sought documents within the defendants' custody and control. 249 F.R.D. at 577 ("Here, the vast majority of the discovery sought from [the third party] is discovery obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants."). The court held that there was "simply no reason to burden nonparties when the documents sought [was] in possession of the party defendant." *Id*. The same is true here.

Even though Doximity failed to serve Requests for Production on this topic, OpenEvidence offered to produce documents and communications responsive to certain of these Requests. Ex. D. Rather than accept this offer, Doximity has without justification or explanation decided to continue

pursuing its improper attempt to obtain party discovery through the use of a nonparty subpoena, needlessly burdening OpenEvidence, LinkedIn, and this Court.

For these reasons, this Court should utilize its powers under Rule 26(b)(2) to quash the LinkedIn Subpoena as to Request Nos. 1–4, 6 and 8.

### C.    In The Alternative, The Court Should Issue A Protective Order

As part of the Court's discretion to control discovery, "[u]nder Rule 26(c), the Court may sua sponte grant a protective order for good cause shown." *Twitch Interactive, Inc. v. Does 1 Through 100*, 2019 WL 3718582, at *5 (N.D. Cal. Aug. 7, 2019) (citation omitted); *see also Coleman v. Schwarzenegger*, 2007 WL 4276554, at *1 (E.D. Cal. Nov. 29, 2007) ("A protective order may include an order that 'discovery not be had.'") (citing Fed. R. Civ. P. 26(c)(1)). "Thus, a district court's Rule-26 discretion can extend to, by way of example, forbidding certain discovery entirely, specifying the terms for discovery in general, forbidding inquiry into particular matters, or limiting the scope of discovery as to certain matters." *Glass Egg*, 2019 WL 4166780, at *4.

As explained above, the LinkedIn Subpoena requests information related to OpenEvidence's highly confidential marketing strategy and information that is in OpenEvidence's possession, custody or control. OpenEvidence respectfully requests that, should the Court deny the Motion to Quash, the Court grant a protective order with the following provisions:

*First*, Doximity should be ordered to seek information in OpenEvidence's possession, custody, or control from OpenEvidence before seeking such information from nonparty LinkedIn.

*Second*, any permitted discovery must be narrowly tailored so as to only seek information that is relevant to the parties' claims or defenses in the underlying action.

*Third*, any production of confidential marketing strategy information should be subject to appropriate confidentiality designations and restrictions on use to prevent Doximity from using OpenEvidence's competitive intelligence for improper competitive purposes.

### V.    CONCLUSION

For the foregoing reasons, OpenEvidence respectfully request that the Court grant this motion to quash the LinkedIn Subpoena or in the alternative issue the protective order as outlined above.

1

2    Dated: December 15, 2025                    Respectfully submitted,

3                                                */s/ Stephen Broome*

4                                                Stephen Broome (admitted pro hac vice)
                                                 stephenbroome@quinnemanuel.com
5                                                QUINN EMANUEL URQUHART &
                                                 SULLIVAN, LLP
6                                                865 South Figueroa Street, 10th Floor
                                                 Los Angeles, California 90017-2543
7                                                (213) 443-3000

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

   The undersigned certifies that on this 15th day of December, 2025 all counsel of record who

3

are deemed to have consented to electronic services are being served with a copy of this Document

4

via email.

5

/s/ Stephen Broome
Stephen Broome

6

*Attorney for OpenEvidence*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28